GADSBERRY *et al. v.* SWAYZE *et al.*\*

(Division B.   Dec. 14, 1925.   Suggestion of Error Overruled Jan. 11, 1926.)

[106 So. 442.   No. 25279.]

WILLS.   *Child of life tenant, though illegitimate, held entitled to remainder.*

Under devise to P. for life, and, if married, remainder to her heirs if any; if not, to go to her husband, a child of P., though illegitimate, takes the remainder; the words "if married" not being intended to be a condition precedent.

\*Headnote 1.   Wills, 40 Cyc., p. 1463.

APPEAL from chancery court of Yazoo county.

HON. V. J. STRICKER, Chancellor.

Suit by Miss Etta Gadberry and others against D. A. Swayze and others.   Decree for defendants, and complainants appeal.   Affirmed.

*T. H. Campbell* and *Ruth Campbell,* for appellant.

The whole case involves a construction of the will of Sarah Caldwell, and the court must determine whether

or not under this will it was contemplated that an illegitimate should take, in view of the language used. In construing this will the court should place itself in the position of the testator at the time of the execution of the will. *Schoottman* v. *Hoffman,* 73 Miss. 199, 1 Jarman on Wills, 428; 1 Redfield on Wills, 418-443.

With knowledge on the part of Sarah Caldwell, the testator, that her niece had given birth to an illegitimate child two years after the will was written and with like knowledge on her part that she had provided in her will, which was then written and in existence, that the property devised should go to the heirs ("children") of Lutie Perry, *if married,* can it be said that such illegitimate child fulfilled the requirement on the part of the testator that the property should go to the child of Lutie Perry, *if she married?* We say not. We are not dealing with the laws of descent and such interpretation as the court may place thereon, but with a will which is substituted therefor and in which the testator may impose such requirements as her fancy, desire and wish may dictate, and by its very terms the testator required and stipulated in plain unequivocal terms that the children of Lutie Perry should take, provided said Lutie Perry married, and not having married, it is plain and evident that a child born to her not in lawful wedlock takes nothing.

Briefly stated, our position is that the word "heirs" as used in the will of Sarah Caldwell is synonymous with "children" and that the word "children" when used in a will as descriptive of a class means only "legitimate children" where there are no words used to convey a different intent, or unless the testator's intention to include them is clear; that it is the general rule that a devise under a will to the children of a named person refers only to "legitimate children" where there are no words used to convey a different intent, or unless the testator's intention to include them is clear.

Now, what kind of children did the testator intend should receive the estate in preference to the husband of Lutie Perry, legitimate or illegitimate children? Clearly, only legitimate children. We invite the court's attention to a consideration of the authorities on this subject. *Johnson* v. *Delone, etc., Co.,* 77 Miss. 27; 28 R. C. L., 214.

In the foregoing presentation we have construed the will so as to give effect to the language of the testatrix as used by her. However, if the court should arbitrarily say that the words, "if married," were not used by the testatrix in order to characterize a legitimate heir of Lutie Perry, the niece, as the object of the testatrix's bounty and thus eliminate these words, "if married," from the will and make for the testatrix a will reading as follows: "To my niece Lutie M. Perry I give my real estate during her life and to go to her heirs, if any; if not, to go to her husband," still we say that the word "heirs" in such a will means only legitimate "heirs" or "children." The authorities are general and abundant that such construction must be given to the word "heirs" as we will now proceed to show. 40 Cyc., page 1451; 28 R. C. L., sec. 222, page 251; *Hicks et al.* v. *Smith et al.* (Ga.), 22 S. E. 153; *Robinson* v. *Georgia R. R. Co.,* 97 Am. State Rep. 156; *Brisbin* v. *Huntington et. al.,* 128 Iowa 166, 5 A. & E. Anno. Cas. 931 and note; *Gates* v. *Seibert,* 157 Mo. 254, 80 A. S. R. 625; *Sheaman* v. *Angel* (S. E.), 23 Am. Dec. 166; note, page 415, *Thomas* v. *Thomas,* 73 Am. St. Rep.; *Alliance Assurance Co.* v. *Francis in re Pearce,* Ann. Cas. 1916A 410; *Peerless Pacific Co.* v. *Burkhard,* 90 Wash. 221, reported in Ann. Cas. 1918B, page 247 and full note. The word "child" in the absence of any facts or circumstances indicating a different interpretation carries with it the meaning of legitimate offspring. *Tillery* v. *Tillery,* 155 Ala. 495, 46 So. 582; *Thompson* v. *McDonald,* 22 N. C. 463.

It is well settled then that when the word "child," or "children," is used in a statute, without qualifying words, it means legitimate child or children, and does not include an illegitimate child or illegitimate children, unless the context broadens its meaning, or some further statutory provision clearly manifests an intention to include them.   Mississippi: *Porter* v. *Porter,* 7 How. 106. 40 Am. Dec. 55; *R. R. Co.* v. *Johnson,* 77 Miss. 727; *R. R. Co.* v. *Williams,* 78 Miss. 209; *Runt* v. *I. C. R. R. Co.,* 88 Miss. 575, 41 So. 1.

The words "child" or "children" in a deed or other conveyance must be held to mean a legitimate child or legitimate children, unless the context is such as to require a different meaning, or the circumstances surrounding the execution of the paper are such as to make the words import other than legitimates   *Johnstone* v. *Talia-fera,* 107 Ga. 6, 32 S. E. 931; 45 L. R. A. 95; *Hall* v. *Cressey,* 92 Me. 514, 43 Atl. 118.

The case of *Shelton* v. *Minnie,* 107 Miss. 133, 65 So. 114, is referred to in the note and its holding pointed out. This case was relied on and referred to in the brief of opposing counsel.   The case is not in point on the question now under consideration.   The point at issue in the case of *Shelton* v. *Minnie,* was not   whether the term "children" included illegitimate as well as legitimate children, but whether or not a named and designated beneficiary (who was the illegitimate child of the insured) had the right to be named as such beneficiary under the by-laws of the company and could take as such beneficiary under said by-laws.

There are certain rules which are applicable to the construction of all wills, one of which is that a gift to children *prima facie* imports legitimate children.   *Hill* v. *Crook,* 7 Moak —; (Eng.) 1 L. R. A. —; 6 H. L. 265, 42 L. J. Ch. 702, 22 W. R. 649; *Dorin* v. *Dorin,* 13 Moak (Eng.) 90 L. R. —, 7 H. L. 568, 45 L. J. Ch. 652, 31 Times

L. Rep. 281, 23 W. R. 570; *In re Eve* (1909), 1 Ch. (Eng.) 796 (1909) N. W. 86.

In the case at bar, not only does there not exist any manifest intention on the part of Sarah Caldwell, the testator, to include illegitimate children of Lutie Perry, but the very language employed, *"if married,* etc.," forecloses such illegitimates from ever taking.

Frankly, we think this review of the authorities is unnecessary and apart from the facts in the instant case because the language of the will is plain and unambiguous; this being true, it is the duty of the court to give effect to the words employed by the testator; and when this is done, the proper effect must be given to her language, "and if married." When this is done, the illegitimate daughter of Lutie Perry cannot take as a purchaser under the will, but only as an heir at law of Sarah Caldwell, the testator, together with the other heirs at law of Sarah Caldwelll.


*E. L. Brown* and *Wise & Bridgforth,* for appellees.


The sole question raised by the demurrer is whether or not this illegitimate daughter of Lutie M. Perry is the ultimate limitee of the will of Sarah Caldwell. If she is, the other descendants of the brothers and sisters of the half-blood have no interest in the subject-matter of the suit. The question is purely one of law.

The device reads: "To my niece, Lutie M. Perry, I give my real estate during her life; and if married, to her heirs if any; if not, to go to her husband. In case she should die without husband or heirs, then to the church, etc." Technically, heirs is a word of limitation, and not of purchase, except when the context plainly demonstrates the contrary. When such demonstration is made, an illegitimate is as technically an heir of the mother as

is a legitimate. All illegitimates and all legitimates are heirs of the mother in this state. If the word "heirs" is not construed to mean children, Lutie took a fee, and her deed passed to the whole estate to demurrant Swayze. Counsel opposite realize that "heirs" has not its technical meaning here. They base their contention upon the language, "if married," which was naturally introduced to express the event which would precede her having "heirs," in the sense of children, as well as the event which would precede her having a "husband." In. limiting to the offspring or husband of an unmarried lady, the testatrix naturally dropped in "if married," lest it might be inferred that she then had a child or husband. The expression is perfectly natural, and cannot be distorted into, "if she have *legitimate* children or a *legally* married husband." "If married" is the contingency upon which the instrument contemplated the existence of a husband, no less than the existence of a child, of the unmarried lady. This is literally true; so that the construction contended for imputes to the testatrix having contemplated that her favorite niece *might* have a child or a husband, though *not* married. Such cannot be found to be within the bounds of legal reason.

Omit "if married" and the lawyers would see the technical significance of "heirs," and the layman would unconsciously perceive that Lutie was then married and had children. Miss Caldwell was a layman, and undesignedly dropped in "if married" to signify that Lutie was *not* then married. Had "if married" been omitted, the word "heirs" would have been a word of limitation, technically speaking, for as Lutie was then living, she could then have no "heirs," as ruled in *Irvine* v. *Newlin,* 63 Miss. 195, for there then would have been no plain demonstration in the will that "heirs" was not used in its technical sense.

It would likewise be useless for us to cite authorities for the proposition that at common law the word "heirs"

meant legitimates or that unless the will make a plain demonstration to the contrary, that word must be given its technical significance. All of these elementary canons are too well known of all jurists, and must be relied on as established, whether specially named or not. Unless the will of Sarah Caldwell contain a plain demonstration to the contrary, as we think it does, the devise to Lutie M. Perry for life, remainder to her "heirs," gives her a fee simple, the word "heirs" being a word of limitation, under its strictly technical sense, unaffected by the use of "if married." *Haring* v. *Flowers,* 91 Miss. 242; *Harris* v. *McCann,* 75 Miss. 805. Therefore, Mr. Swayze secured the fee simple under Lutie's deed, and sale under her trust-deed, which would end the case.

We concede that, tested upon common-law principles, Lillian could not be held a limitee under this will; but the law with reference to illegitimates has undergone many radical departures from common-law principles; so radical have been these changes as to evince a complete departure from the spirit of that law. As to the mother, an illegitimate is no longer *nullius filius.* In every aspect, such an unfortunate *has a* mother, in the eye of our law. *Bennett* v. *Toler,* 15 Grattan 588, 78 Am. Dec. 638. Founded upon the logic and legal philosophy of that great case, our court, as between the husband and illegitimate, has ruled that an illegitimate child of the mother is her "child" within the meaning of the by-laws of a mutual benefit association. *Shelton* v. *Minnis,* 107 Miss. 133; *Davidson* v. *Brownlee,* 114 Miss. 398; *McDaniel* v. *McDaniel,* 123 Miss. 410.

In construing a contract of life insurance, where the by-laws of the order provided for a *"child"* to be a beneficiary, our court held that an illegitimate was a "child," within the meaning of that contract, basing such ruling on the influence of our statute of descent and distribution upon the public policy of this state towards illegitimates. *Shelton* v. *Minnis,* 107 Miss. 133.

To avoid the ruling in *Bennett* v. *Toler,* 15 Gratt. 588, (S. C.) 78 Am. Dec. 638, counsel refer to the case of *Johnstone* v. *Taliaferro,* 107 Ga. 6, 45 L. R. A. 95, the only case they cite as criticising that great case, and holding that the court may enter upon the sea of uncertainty by inquiring whether or not the testator knew, at the time of the execution of his, will, that an illegitimate was in existence. This Georgia case falls within that line of authority which Judge CAMPBELL says has *"very feeble and unsubstantial support."* *Irvine* v. *Newlin,* 63 Miss. 197. This consideration also disposes of the case of *School,* 100 Wis. 8, S. C. 76 N. W. 616, the only other case counsel find departing from the rule of *Bennett* v. *Toler.* Cases in line with *Bennett* v. *Toler,* are *Harrell* v. *Hagan,* 147 N. C. 11, S. C. 125 A. S. R. 539; *McGunnigle* v. *McKee,* 77 P. Ste., 428, S. C. 18 A. R. 428; *Drain* v. *Violatt,* 2 Bush (Ky.) 155; *Cherry* v. *Mitchell,* 108 Ky. 1; *In re Wardell,* 57 Cal. 484; *Miller's Appeal,* 52 Pa. St. 81.

The exigencies of counsel are too great; they must interpret "heirs" to mean "children" in order to avoid vesting the fee in Miss Lutie M. Perry; they can so interpret the word heirs only by resorting to "if married;" having used "if married" to find a limitation to her children, they must also use it to create a condition; thus, out of "if married," at once converting the word "heirs" into "children," and defining the condition, still ignoring the fact that she could have "heirs," even though *not* married though could not have a husband if not "married." It is perfectly manifest that "if married" simply manifested that she was then unmarried, and, therefore, had no husband or children—one no less than another—and served the purpose, nevertheless, of making "heirs" mean children. Without "if married," Miss Perry took the fee, with that phrase, "heirs" meant "children" and did not mean *legitimate* children any more than it meant legitimate husband, and it did not

describe the kind of children any more than it described the kind of husband.

"Heirs" meant children, as used in the will; a child born to this woman life-tenant, legitimate or illegitimate, was her heir; she was technically her heir; she was, in the popular understanding, her heir; Miss Caldwell may be presumed to have known the law which made her technically an heir; she knew the popular meaning of the word comprehended her as an heir; had her mother died before Miss Caldwell did, that child would have been her own heir; she made a will, why give that word such construction as to exclude that child, within the meaning of that word the testatrix used?

HOLDEN, P. J., delivered the opinion of the court.

The suit involves the title to about three hundred acres of land, and depends upon the construction of the will of Sarah Caldwell, deceased, as to whether the complainants, who were the descendants of the brothers and sisters, and therefore heirs, of the decedent, take the land by inheritance, or whether the appellees have superior title thereto by purchase from Mrs. Lillian Wilkinson (*nee* Perry), illegitimate daughter of Lutie M. Perry, niece of the testatrix, Sarah Caldwell, and to whom the land here in question was devised by the will of Sarah Caldwell, deceased.

If the clause in the will, which we shall presently set out, is construed to mean that Lillian the illegitimate daughter of Lutie M. Perry, takes nothing by the will of Sarah Caldwell, then the title to the property would go by descent to the descendants of the brothers and sisters of the testatrix, complainants herein; but, if Lillian, the illegitimate daughter of Lutie Perry, took the remainder estate as the child of Lutie Perry, under the will, then the purchasers from her, appellees, must prevail in title as against the heirs of the testatrix.

The clause, of the will to be construed by us is as follows: "To my niece, Lutie M. Perry, I give my real estate during her life, and if married to her heirs, if any, if not, to go to her husband. In case, she should die without husband or heirs then to the church," etc.

It is conceded by counsel on opposite sides that "to her heirs" as used here means "to her children." This construction is reached on the theory that the language of the will plainly demonstrates that the words are not of limitation, but are of purchase, and it was intended that the remainder estate go to the children of the life tenant, Lutie M. Perry. It is also conceded that the provision in favor of the church was void. Under the statutes of this state it is also settled that a bastard inherits from the mother.

The exact point to be decided, then, is whether the testatrix intended that an illegitimate child of Lutie M. Perry should take under the will, or whether she meant that only legitimate children of Lutie Perry should take; the testatrix having used the language "and if married to her heirs," which it is contended by the appellant precludes illegitimates from taking under the will, while the appellees maintain that any child of Lutie Perry was entitled to take under the will, and that the words "if married" were not intended by the testatrix to be a condition precedent and bar illegitimate children.

The facts and circumstances surrounding the execution of the will are in evidence to show the intent of the maker. It seems that Lutie Perry was a favorite niece of the testatrix, Sarah Caldwell, and that the testatrix devised the property to Lutie for life, with the remainder to the children (heirs) of Lutie.

About two years after the will was executed Lutie gave birth to the illegitimate Lillian, and the testatrix knew of this, but did not change her will, and it was some years afterwards before she died. She must have known that the property would go to the illegitimate child unless she made some change in her will before she died. This fact

is not controlling, but throws some light on the intention of the testatrix, and aids us in reaching the conclusion that the words "if married" used by her in the will were not intended to bar an illegitimate child from taking the remainder estate after the death of Lutie.

It may be reasonably assumed that the testatrix knew that an illegitimate child is an "heir" of the mother under our statute, which overcomes and dispels the common-law rule that such devises to children unborn contemplate only legitimate children. It seems to us that the dominant thing in the mind of the testatrix was that Lutie was to have the property during her life; then it was to go to her offspring. Lillian was the offspring and legal heir of Lutie, and therefore took the remainder estate at the death of the life tenant.

It appears to us that it would be reasonable to construe this clause of the will as meaning that the testatrix intended that the children of Lutie should take the estate, regardless of whether or not they were legitimate. The use of the words "if married" was merely the expression of the testatrix in assuming that, of course, there would be no children, unless there was a marriage, and to provide for her husband, if she had one; but it was not thought, in our opinion, by the testatrix that there ever would be children born of Lutie except in lawful wedlock, and therefore the question of whether illegitimate children would take under the will never arose in the mind of the testatrix, unless two years afterwards, when she knew that Lutie had had the illegitimate daughter, she refused to change the terms of her will.

It may be that the testatrix would have provided against illegitimates taking after Lutie's death if she had thought such a thing as illegitimacy might occur; but we are thoroughly convinced that the testatrix had no such thought in mind, and simply meant to provide in her will that Lutie was to enjoy the property during her lifetime, and then her children (her heirs, her offspring) should take the remainder.

We think this is the true construction of the clause involved, and it follows that the decree of the lower court was correct and should be affirmed.

*Affirmed.*